**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
NORTHERN DIVISION**

**CAROL D. COLLINS**                                                                                       **PLAINTIFF**

**V.**                               **No. 3:21-cv-00001-LPR-ERE**

**COMMISSIONER OF THE
SOCIAL SECURITY ADMINISTRATION**                                        **DEFENDANT**

**RECOMMENDED DISPOSITION**

This Recommended Disposition (Recommendation) has been sent to United States District Judge Lee P. Rudofsky. Either party may file written objections to this Recommendation. If objections are filed, they should be specific and should include the factual or legal basis for the objection.

To be considered, objections must be received in the office of the Court Clerk within 14 days of this Recommendation. If no objections are filed, Judge Rudofsky can adopt this Recommendation without independently reviewing the record. By not objecting, parties may also waive the right to appeal questions of fact.

**I.   Introduction:**

On February 27, 2018, Carol D. Collins filed a Title II application for disability and disability insurance benefits. *Tr. at 23*. On April 20, 2018, she filed a Title XVI application for supplemental security income. *Id*. In both applications, she

alleged disability beginning on January 1, 2012.[1] *Id*. In a February 24, 2020 decision, an administrative law judge (ALJ) denied both applications. *Tr. at 33*. The Appeals Council denied Ms. Collins' request for review on November 20, 2020. *Tr. at 1*. The ALJ's decision now stands as the final decision of the Commissioner, and Ms. Collins has requested judicial review.

For the reasons stated below, the Court recommends that the ALJ's decision be reversed and remanded for further review.

II. **The Commissioner's Decision:**

At step one of the required five-step analysis, the ALJ found that Ms. Collins, who was 50 years old at the time of the hearing (*Tr. at 44*), had not engaged in substantial gainful activity since the alleged onset date of January 1, 2012.[2] *Tr. at 25*. At step two, the ALJ determined that Ms. Collins has the following severe

---

[1] Ms. Collins had enough quarters of coverage from her prior employment to remain insured through September 30, 2012. *Tr. at 23-24, 33*. So, for the Title II claim, Ms. Collins must show disability beginning on the alleged onset date and running through September 30, 2012. *Id*. For Title XVI claims, the relevant time-period for determination of eligibility for benefits begins on the application date. 20 CFR § 416.325. For the Title XVI claim, Ms. Collins must show disability beginning on April 20, 2018 and running through the date of the ALJ's decision, on February 24, 2020.

[2] The ALJ followed the required five-step analysis to determine: (1) whether the claimant was engaged in substantial gainful activity; (2) if not, whether the claimant had a severe impairment; (3) if so, whether the impairment (or combination of impairments) met or equaled a listed impairment (Listing); (4) if not, whether the impairment (or combination of impairments) prevented the claimant from performing past relevant work; and (5) if so, whether the impairment (or combination of impairments) prevented the claimant from performing any other jobs available in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(a)-(g), 416.920(a)-(g).

impairments: degenerative disc disease of the lumbar spine with spondylosis, scoliosis, depression, anxiety, posttraumatic stress disorder (PTSD), and panic disorder. *Tr. at 26.*

After finding that Ms. Collins' impairments did not meet or equal a listed impairment (*Tr. at 26-28*), the ALJ determined that she had the residual functional capacity (RFC) to perform work at the light exertional level, with the following additional limitations: (1) she can never climb ladders, ropes, or scaffolds; (2) she is limited to occasional climbing of ramps and stairs, and can occasionally balance, stoop, crouch, kneel, and crawl; (3) she must avoid concentrated exposure to excessive vibrations; (4) she can understand, remember, and carry out simple work instructions and procedures and can make simple work-related decisions; (5) she can maintain concentration, persistence, and pace for two hours at a time for simple tasks; (6) she can adapt to changes in the work setting that are simple, predictable, and can be easily explained; (7) she is limited to supervision that is simple, direct, and concrete; and (8) she is limited to interpersonal contact that is incidental to the work performed. *Tr. at 28*.

Based on a vocational expert's testimony, the ALJ found that Ms. Collins was capable of performing her past relevant work as a sorter. *Tr. at 32*. Therefore, the ALJ found that Ms. Collins was not disabled. *Tr. at 32-33*.

## III. Discussion:

### A. Standard of Review

The Court's function on review is to determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole and whether it is based on legal error. *Miller v. Colvin*, 784 F.3d 472, 477 (8th Cir. 2015); see also 42 U.S.C. § 405(g). While "substantial evidence" is that which a reasonable mind might accept as adequate to support a conclusion, "substantial evidence on the record as a whole" requires a court to engage in a more scrutinizing analysis:

> Our review is more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision; we also take into account whatever in the record fairly detracts from that decision. Reversal is not warranted, however, merely because substantial evidence would have supported an opposite decision.

*Reed v. Barnhart*, 399 F.3d 917, 920 (8th Cir. 2005) (citations omitted).

In clarifying the "substantial evidence" standard applicable to review of administrative decisions, the Supreme Court has explained: "And whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence . . . 'is more than a mere scintilla.'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consolidated Edison Co. v. NLRB*, 59 S. Ct. 206, 217 (1938)). "It means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id*.

**B.     Medical Summary**

Ms. Collins had back pain, and difficulty with sitting, standing, and walking. A lumbar MRI showed mild-to-moderate conditions that were treated with narcotics and steroid injections, which were moderately effective. *Tr. at 12-17*.

Ms. Collins also suffered from mental impairments that caused significant problems in her life. She attempted to commit suicide in 2016 and was hospitalized thereafter for two weeks. *Tr. at 56, 382, 1674-1676*. She began regular psychiatric treatment at Hope Behavioral Healthcare, seeing licensed professional counselor Gale Tinsman and psychiatrist Thomas Zurkowski. *Tr. at 1659-1685, 1801-1867*. On November 11, 2016, she reported to Ms. Tinsman that she had fatigue, low energy, and crying spells. *Tr. at 377*. She said her aunt's death the month before had been hard on her. *Tr. at 379*. Ms. Collins told Ms. Tinsman that she could not eat and was unable to concentrate. *Tr. at 383*. Dr. Zurkowski signed off on this office visit note. *Tr. at 384*. On December 20, 2016, Dr. Zurkowski wrote that Ms. Collins felt worthless, hopeless, anxious, and had a lack of focus. *Tr. at 1837*.

In August 2017, Ms. Collins reported to her therapist, Ms. Tinsman, that she had made some progress in therapy, but due to serious family problems, she was hiding out in her bedroom most days. *Tr. at 1852-1855*. In November 2017, she told Ms. Tinsman that she had no motivation and that her PTSD symptoms were worse. *Tr. at 1848-1851*. On November 21, 2017, Ms. Collins told Dr. Zurkowski that she

felt a deep depression that caused her to eliminate activities from her life that she had once enjoyed. *Tr. at 1674-1677*. Dr. Zurkowski filled out a form that certified Ms. Collins as an adult with a serious mental illness based on PTSD, Major Depression, Panic, and Anxiety. *Tr. at 1677, 1867*.

In treatment notes for February 2018, Ms. Tinsman stated that Ms. Collins had kept appointments and was taking her medications as prescribed. *Tr. at 384-387*. But she noted that Ms. Collins had lost most of the progress she had made in therapy due to increasing depression, and it had been a "difficult quarter." *Id*. On May 2, 2018, Ms. Collins told Ms. Tinsman that she had been choking and stuttering, and she had a racing heart. *Tr. at 1856-1859*. She could not think clearly, but wondered, "Why did I survive?" *Id*. She was struggling with finances. *Id*. At a session on November 27, 2018, Ms. Collins had extreme anxiety and was getting 2-3 hours of sleep. *Tr. at 1822-1825*. She said she had no energy and had frequent panic attacks. *Id*.

In early 2019, Ms. Collins seemed to be doing better, but by November 2019, she had deteriorated, and she told Ms. Tinsman she needed to simplify her therapy goals. *Tr. at 1808-1812*.

    **C.**    **Ms. Collins' Arguments on Appeal**

Ms. Collins contends that the evidence supporting the ALJ's decision to deny benefits is less than substantial. Her sole argument is that the ALJ did not properly

analyze or discuss her subjective complaints. The Court finds cause for reversal based on grounds not raised by Ms. Collins' counsel.

### 1. *Sua Sponte* Consideration of an Issue

Courts may *sua sponte* address issues not raised in pleadings in Social Security cases. *Battles v. Shalala*, 36 F.3d 43, 45 n. 2 (8th Cir. 1994) ("Even if Battles had not raised an issue concerning the fairness of his hearing, we might well have raised it *sua sponte*."); *Miles v. Colvin*, 973 F. Supp. 2d 1030, 1043 (E.D. Mo. 2013) (holding that when a plaintiff "does not present a fully developed argument challenging the ALJ's credibility determination . . . this Court may review the issue *sua sponte*.").

In a situation similar to the present case, an ALJ ignored a treating provider's opinion, and the claimant did not raise the issue in her pleading. However, the court *sua sponte* reversed the ALJ, noting:

> [The Court] has the power to notice a 'plain error' though it is not assigned or specified and that [i]n exceptional circumstances . . . appellate courts, in the public interest, may, of their own motion, notice error to which no exception has been taken, if the errors are obvious, or if they otherwise seriously affect the fairness, integrity, or public reputation of judicial proceedings.

*Watson v. Comm'r. of Soc. Sec.*, No. 1:17CV00099-JMV, 2018 U.S. Dist. LEXIS 167847 (N.D. Miss. Sept. 28, 2018) (citing *Silber v. United States*, 370 U.S. 717, 717-718 (1962)).

## 2. The ALJ's Duty to Assess Medical Opinion Evidence

On January 28, 2017, the Administration promulgated new regulations that govern an ALJ's assessment of medical opinion evidence. The new rules focus on whether a medical opinion is persuasive, based on: (1) supportability; (2) consistency with the evidence; (3) relationship with the claimant;[3] (4) provider specialization; and (5) any other important factor. See 20 C.F.R. § 404, 1520c(a)-(c) (2017). An opinion is more persuasive if it is consistent with and supported by the medical evidence as a whole. 20 C.F.R. § 416.920c(c)(1-2) (2017). Furthermore, an ALJ must give good reasons for his findings about an opinion's persuasiveness. *Phillips v. Saul*, No 1:19-CV-00034-BD, 2020 U.S. Dist. LEXIS 110370, at *4 (E.D. Ark. June 24, 2020).

A discussion of consistency and supportability is meant to provide claimants with a better understanding of the Commissioner's decision and to provide sufficient rationale for a reviewing adjudicator or court. Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 FR 5844-01 at 5854, 5858 (January 18, 2017).

An ALJ's failure to specifically address the consistency *and* supportability of any medical opinion is reversible error. *Bonnett v. Kijakazi*, 859 Fed. Appx. 19 (8th Cir. 2021) (reversing an ALJ decision that adequately evaluated supportability of

---

[3] This includes: (1) length of treatment relationship; (2) frequency of examinations; (3) purpose of the treatment relationship; (4) extent of the treatment relationship; and (5) examining relationship].

opinion but failed to address consistency with other evidence of record); *Bonneau v. Saul*, No. 3:20-cv-00095-PSH, 2021 U.S. Dist. LEXIS 44605, at *11 (E.D. Ark. March 10, 2021) (reversing an ALJ decision that "completely ignored the [supportability] factor.").

### 3. The ALJ's Failure to Adequately Address a Medical Opinion

On December 11, 2019, Ms. Tinsman, Ms. Collins' treating therapist, wrote a letter on her behalf. *Tr. at 1870*. Ms. Tinsman wrote that she had been treating Ms. Collins for three years for PTSD, major depressive disorder, generalized anxiety disorder, and panic disorder. *Id*. She noted complicated repercussions from past sexual and physical abuse and that Ms. Collins "currently suffers from depression and symptoms of PTSD so severely that she will lock herself in her room for days or weeks and not come out even to eat." *Id*. These statements seriously call into question Ms. Collins' ability to maintain employment.

The ALJ classified Ms. Tinsman's letter as a medical opinion *(Tr. at 30-31)*, but he offered no explanation of whether he found it persuasive. Nor did he address its consistency or supportability. Instead, he said only that the letter had been "reviewed and considered." *Tr. at 31*. Under applicable law, this cursory rejection of Ms. Collins' treating therapist's opinion is plain error.

### IV. Conclusion:

For the reasons stated above, the ALJ's decision is not supported by

substantial evidence, because the ALJ failed to properly assess a critical medical opinion, which constitutes plain error.

IT IS THEREFORE RECOMMENDED that the Commissioner's decision be REVERSED and the case be REMANDED for further review.[4]

DATED this 20th day of December, 2021.

_____
UNITED STATES MAGISTRATE JUDGE

---

[4] Ms. Collins urges remand and an immediate award of benefits. Remand for an immediate award of benefits is an extraordinary remedy, which is only appropriate when the record overwhelmingly supports disability. *Fowler v. Bowen*, 866 F.2d 249, 253 (8th Cir. 1989); *Hutsell v. Massanari*, 259 F.3d 707, 714 (8th Cir. 2001). That bar has not been cleared here.